U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2023 JUN 29 PM 1:21

CLERK

BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA )
 )
v. )
 ) Criminal No. 2:22-cr-98
NICHOLAS MELANSON, )
Defendant. )

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### Introduction

1. In May 2022, R.W. was seventy-five years old and lived in Windsor, Vermont.

R.W. lived alone and was experiencing cognitive deficits.

2. As of May 2022, R.W. held accounts at financial institutions including Mascoma

Savings Bank and People's United Bank (which was acquired by M&T Bank), both of whose

deposits were insured by the Federal Deposit Insurance Corporation.

3. In May 2022, the defendant, NICHOLAS MELANSON, lived in New Hampshire.

4. In May 2022, the defendant, NICHOLAS MELANSON, communicated with one

or more unknown individuals about R.W. via electronic messages and via telephone calls using

his cell phone. NICHOLAS MELANSON knew one of these unknown individuals as "Natasha"

(or "Tatiana") and another as "John Broker."

5. From on or about May 10, 2022 through on or about May 19, 2022, "Natasha"

and "John Broker" directed NICHOLAS MELANSON to meet with and transport R.W. so that

R.W. would engage in various financial transactions, and directed NICHOLAS MELANSON to

1

aid in executing certain financial transactions by depositing and sending via FedEx various checks written by R.W.

6.      Prior to May 11, 2022, NICHOLAS MELANSON had not met or interacted with R.W.

7.      Based on his personal interactions with R.W., NICHOLAS MELANSON made the following observations, among others, relating to R.W.'s cognitive limitations:

> a.      On or about May 12, 2022, NICHOLAS MELANSON stated via electronic message to "Natasha" that he understood why "John Broker" was "repeating himself over and over again lol" while communicating with R.W., because R.W. "asked me 3 times what my name was. Lol";
>
> b.      On or about May 17, 2022, NICHOLAS MELANSON stated via electronic message to "Natasha" that "John Broker" had R.W. "all flustered and she keeps forgetting things";
>
> c.      Also, on or about May 17, 2022, NICHOLAS MELANSON stated via electronic message to "Natasha" that he thought R.W. "is starting to have Alzheimer's"; and
>
> d.      On or about May 19, 2022, NICHOLAS MELANSON stated to law enforcement that he believed R.W. was not able to make informed decisions about large financial transactions without guidance and instruction from someone else.

## The Scheme

8.      From on or about May 11, 2022, through on or about May 19, 2022, defendant NICHOLAS MELANSON knowingly and willfully aided and abetted a scheme and artifice to

defraud R.W. and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

9.     Specifically, knowing of R.W.'s cognitive limitations, NICHOLAS MELANSON: drove to R.W.'s residence to take delivery of checks R.W. made out to him and others for tens of thousands of dollars; deposited and attempted to deposit certain of those checks into his and another's bank accounts; forwarded at least one check via FedEx to another person; and transported R.W. to Mascoma Savings Bank and People's United Bank locations where R.W. would make withdrawals of funds from R.W.'s accounts at the direction of others, including NICHOLAS MELANSON and "John Broker."

## Manner and Means

10.     It was part of the scheme that "Natasha" and "John Broker" caused R.W. to write checks from her bank accounts, payable to various persons, including NICHOLAS MELANSON and individuals whose first names were Joyce and Samuel, among others.

11.     It was part of the scheme that on or about May 10, 2022, "Natasha" asked NICHOLAS MELANSON to travel to R.W.'s home in Vermont in order to "pick up money from there."

12.     It was part of the scheme that on or about May 11, 2022, NICHOLAS MELANSON, following the above-described instructions, drove to R.W.'s home in Vermont. At "Natasha's" instruction, NICHOLAS MELANSON waited until no other cars were present at R.W.'s residence before meeting with R.W.

13.     It was part of the scheme that on or about May 11, 2022, at R.W.'s Vermont residence, NICHOLAS MELANSON received two envelopes from R.W., one of which had NICHOLAS MELANSON's name on it. The other envelope bore the name of someone whose

3

first name was Janice. "Natasha" instructed NICHOLAS MELANSON to keep these envelopes "safe."

        a. It was part of the scheme that later on or about May 11, 2022, "Natasha" instructed NICHOLAS MELANSON to FedEx the envelope bearing Janice's name to an address in Texas and, on or about May 12, 2022, NICHOLAS MELANSON sent the envelope as directed.

        b. It was part of the scheme that later on or about May 11, 2022, "Natasha" instructed NICHOLAS MELANSON to open the envelope bearing NICHOLAS MELANSON's name. "Natasha" advised NICHOLAS MELANSON that he was "gonna see two checks inside."

        c. It was part of the scheme that later on or about May 11, 2022, MELANSON sent "Natasha" images of those two checks, each from R.W.'s People's United Bank account and each made payable to NICHOLAS MELANSON for \$25,000.00. It was part of the scheme that "Natasha" eventually instructed NICHOLAS MELANSON to deposit one of the checks into NICHOLAS MELANSON's account at Bank of America, and the other check into NICHOLAS MELANSON's Triangle Credit Union account, and that NICHOLAS MELANSON made these deposits on or about May 13, 2022.

    14. It was part of the scheme that on or about May 12, 2022, "John Broker" directed NICHOLAS MELANSON to return to R.W.'s residence in Vermont, and that there NICHOLAS MELANSON received two envelopes from R.W. One of the envelopes bore the name of a

4

person with first name Joyce; the other bore the name of a person with first name Samuel, along with an address.

      a. It was part of the scheme that later on or about May 12, 2022, NICHOLAS MELANSON sent "John Broker" an image of three checks made payable to the person with first name Samuel, all from R.W.'s People's United Bank account for $55,000; $47,000; and $47,000, respectively. Minutes later, NICHOLAS MELANSON sent "John Broker" an image of the two $47,000 checks with the word "VOID" written on them. Also on or about May 12, 2022, NICHOLAS MELANSON sent a FedEx parcel to the person with first name Samuel and sent an image of the FedEx receipt to "Natasha" and to "John Broker."

      b. It was part of the scheme that on or about May 13, 2022, "Natasha" instructed NICHOLAS MELANSON to deposit two $49,000 checks from R.W.'s People's United Bank account made payable to the person named Joyce, one to a Bank of America account, and one to a Chase Bank account, and provided MELANSON with the account numbers for the accounts into which these checks were to be deposited.

      c. It was part of the scheme that on or about May 13, 2022, after NICHOLAS MELANSON made the above-described deposits, he forwarded to "Natasha" and "John Broker" electronic images of the receipts showing that the two $49,000 deposits had been made.

15.    It was part of the scheme that on or about May 12, 2022, NICHOLAS MELANSON drove R.W. to the Mascoma Bank branch in Windsor, Vermont, where R.W.

withdrew $2,000 in cash, giving NICHOLAS MELANSON approximately $1,500 of this sum, and "John Broker" instructed NICHOLAS MELANSON to receive this cash from R.W.

16.     It was part of the scheme that on or about May 12, 2022, NICHOLAS MELANSON assisted R.W. with depositing $90,000 from her People's United Bank account into her Mascoma Savings Bank account.

17.     It was part of the scheme that on or about May 16, 2022, "John Broker" and "Natasha" requested that NICHOLAS MELANSON again drive to R.W.'s Vermont residence. NICHOLAS MELANSON did so, then picked up R.W., and took her to bank branches, and received additional checks from her. After MELANSON left R.W.'s residence, he advised "Natasha" that he received from R.W. three checks, one check payable to NICHOLAS MELANSON, and two checks payable to Joyce.

> a. It was part of the scheme that the May 16, 2022 check made payable from R.W.'s Mascoma Savings Bank account to NICHOLAS MELANSON was in the amount of $3,000 and "Natasha" advised NICHOLAS MELANSON this was money for NICHOLAS MELANSON and was his "bonus." At the instruction of "Natasha," on or about May 17, 2022, NICHOLAS MELANSON deposited the check into his Triangle Credit Union account.
>
> b. It was part of the scheme that after advising NICHOLAS MELANSON that the $3,000 was for him, "Natasha" directed NICHOLAS MELANSON to purchase $2,000 in bitcoin (a type of virtual currency commonly referred to as cryptocurrency or digital currency) and transfer the bitcoin to her, and NICHOLAS MELANSON did as directed.

      c.  It was part of the scheme that on or about May 17, 2022, NICHOLAS

MELANSON went to a Chase Bank branch in New Hampshire in order to

deposit one of the checks made payable to Joyce, as "Natasha" instructed.

While he was at the bank MELANSON messaged "Natasha" that "I'm at

chase bank and they couldn't deposit the check". After exchanging

additional messages, "Natasha" instructed MELANSON that he "can

leave the bank and go to [R.W.]," and that MELANSON should "[c]ollect

the check and leave the bank."

18.     It was part of the scheme that on or about May 16, 2022, NICHOLAS

MELANSON took R.W. to bank branches to obtain $80,000 from her People's United Bank

account and deposit it into her Mascoma Savings Bank account.

19.     It was part of the scheme that on or about May 17, 2022, "Natasha" directed

NICHOLAS MELANSON to "go to [R.W.] and pick up some money" and informed him "you

are gonna get paid" "[s]o I need you today." That day, NICHOLAS MELANSON again picked

up R.W. and took her to bank branches to conduct financial transactions. During this time, "John

Broker" was on the phone with MELANSON and R.W., and MELANSON reported to

"Natasha" that "John has [R.W.] all flustered and she keeps forgetting things."

20.     It was part of the scheme that on or about May 17, 2022, after NICHOLAS

MELANSON returned R.W. to her home, NICHOLAS MELANSON advised "Natasha" that: "I

only got two checks today cashier checks was supposed to get two more but because of

everything happened and all the reminding of her what to do all the pausing the banks were

closed." Later that evening, NICHOLAS MELANSON sent "John Broker" and "Natasha"

electronic images of two cashier's checks drawn on R.W.'s account from People's United Bank,

one made payable to the person with first name Joyce for $48,000 and the other made payable to a business name in the amount of $60,000.

        a. It was part of the scheme that on or about May 18, 2022, NICHOLAS MELANSON went to a Bank of America branch in New Hampshire and deposited the check made payable to Joyce, as instructed by "Natasha."

21.     It was part of the scheme that on or about May 17, 2022, "Natasha" instructed NICHOLAS MELANSON to purchase $2,000 in bitcoin and send approximately $1,000 in bitcoin to two different bitcoin wallets, and NICHOLAS MELANSON did as instructed.

22.     It was part of the scheme that on or about May 19, 2022, NICHOLAS MELANSON again drove to R.W.'s Windsor, Vermont residence in order to transport her to conduct additional financial transactions, reporting via electronic message to "Natasha" that "I'm heading out to [R.W.'s] house."

23.     It was part of the scheme that on or about May 19, 2022, NICHOLAS MELANSON transported R.W. to People's United Bank and Mascoma Savings Bank branches where, at the direction of "John Broker," they sought to open and close R.W.'s accounts. At the banks, NICHOLAS MELANSON falsely represented that he was R.W.'s nephew, when in fact he had no familial relationship to her. While at one branch, NICHOLAS MELANSON reported to "John Broker" that the police department had responded; "John Broker" instructed MELANSON to "[t]ell them your trying to help her out because of all the fraud that is going on."

24.     On or about each of the dates set forth below, in the District of Vermont and elsewhere, defendant NICHOLAS MELANSON, for the purpose of executing the scheme described above, and attempting to do so, transmitted and caused to be transmitted by means of

wire communication in interstate and foreign commerce the following electronic messages for

the purpose of executing the scheme described above:

| Count | Date | Description |
|-------|------|-------------|
| One | May 12, 2022 | Message to "Natasha" that reads "I'm at her bank now" |
| Two | May 12, 2022 | Message to "Natasha" that reads ". . . she asked me 3 times what my name was. Lol" |
| Three | May 16, 2022 | Message to "John Broker" that reads "Now the check for $3,000 is my money?" |
| Four | May 17, 2022 | Message to "Natasha" that reads "John has her all flustered and she keeps forgetting things" |
| Five | May 19, 2022 | Message to "Natasha" that reads "Now I'm at her 2nd bank" |
| Six | May 19, 2022 | Message to "John Broker" that reads "Waiting on the fraud department to call back the bank" |

(18 U.S.C. §§ 1343 & 2)

<u>Count Seven</u>

25.    The allegations in paragraphs 1 through 7 and 9 through 23 are incorporated herein.

26.    From on or about May 11, 2022, through on or about May 19, 2022, defendant NICHOLAS MELANSON knowingly executed and attempted to execute a scheme and artifice to obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, financial institutions, by means of false and fraudulent pretenses, representations, and promises.

(18 U.S.C. §§ 1344(2) & 2)

## Count Eight

Between on or about May 11 and 13, 2022, in the District of Vermont and elsewhere, the defendant, NICHOLAS MELANSON, unlawfully transported, transmitted, and transferred in interstate commerce, between the State of Vermont and the State of New Hampshire, a security of a value of $5,000 or more that was stolen, converted, and taken by fraud, that is, check number 4086 written in the amount of $25,000 and payable to NICHOLAS R. MELANSON, which NICHOLAS MELANSON knew had been stolen, converted, and taken by fraud.

(18 U.S.C. §§ 2314 & 2)

<u>Count Nine</u>

Between on or about May 11 and 13, 2022, in the District of Vermont and elsewhere, the defendant, NICHOLAS MELANSON, unlawfully transported, transmitted, and transferred in interstate commerce, between the State of Vermont and the State of New Hampshire, a security of a value of $5,000 or more that was stolen, converted, and taken by fraud, that is, check number 4087 written in the amount of $25,000 and payable to NICHOLAS R. MELANSON, which NICHOLAS MELANSON knew had been stolen, converted, and taken by fraud.

(18 U.S.C. §§ 2314 & 2)

<u>Count Ten</u>

On or about May 12, 2022, in the District of Vermont and elsewhere, the defendant, NICHOLAS MELANSON, unlawfully transported, transmitted, and transferred in interstate commerce, between the State of Vermont and the State of New Hampshire, a security of a value of $5,000 or more that was stolen, converted, and taken by fraud, that is, check number 4178 written in the amount of $55,000 and payable to an individual with first name Samuel, which NICHOLAS MELANSON knew had been stolen, converted, and taken by fraud.

(18 U.S.C. §§ 2314 & 2)

## Count Eleven

Between on or about May 12 and 13, 2022, in the District of Vermont and elsewhere, the

defendant, NICHOLAS MELANSON, unlawfully transported, transmitted, and transferred in

interstate commerce, between the State of Vermont and the State of New Hampshire, a security

of a value of $5,000 or more that was stolen, converted, and taken by fraud, that is, check

number 4172 written in the amount of $49,000 and payable to an individual with first name

Joyce, which NICHOLAS MELANSON knew had been stolen, converted, and taken by fraud.

(18 U.S.C. §§ 2314 & 2)

<u>Count Twelve</u>

Between on or about May 12 and 13, 2022, in the District of Vermont and elsewhere, the defendant, NICHOLAS MELANSON, unlawfully transported, transmitted, and transferred in interstate commerce, between the State of Vermont and the State of New Hampshire, a security of a value of $5,000 or more that was stolen, converted, and taken by fraud, that is, check number 4173 written in the amount of $49,000 and payable to an individual with first name Joyce, which NICHOLAS MELANSON knew had been stolen, converted, and taken by fraud.

(18 U.S.C. §§ 2314 & 2)

<u>Count Thirteen</u>

Between on or about May 17 and 18, 2022, in the District of Vermont and elsewhere, the defendant, NICHOLAS MELANSON, unlawfully transported, transmitted, and transferred in interstate commerce, between the State of Vermont and the State of New Hampshire, a security of a value of $5,000 or more that was stolen, converted, and taken by fraud, that is, cashier's check number 9946551 written in the amount of $48,000 and payable to an individual with first name Joyce, which NICHOLAS MELANSON knew had been stolen, converted, and taken by fraud.

(18 U.S.C. §§ 2314 & 2)

<u>Count Fourteen</u>

Between on or about May 17 and 18, 2022, in the District of Vermont and elsewhere, the defendant, NICHOLAS MELANSON, unlawfully transported, transmitted, and transferred in interstate commerce, between the State of Vermont and the State of New Hampshire, a security of a value of $5,000 or more that was stolen, converted, and taken by fraud, that is, cashier's check number 9946552 written in the amount of $60,000 and payable to a business name, which NICHOLAS MELANSON knew had been stolen, converted, and taken by fraud.

(18 U.S.C. §§ 2314 & 2)

Forfeiture Notice

1.     The allegations contained in Counts One through Six of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.     Upon conviction for any and all of the violations alleged in Counts One through Six of this Superseding Indictment, the defendant NICHOLAS MELANSON shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such violations.  The property to be forfeited includes, but is not limited to, the following:

        a.     all United States funds obtained as a result of the violation.

3.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of this court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

                    (21 U.S.C. § 334; 28 U.S.C. § 2461(c))

A TRUE BILL

REDACTED

FOREPERSON

NIKOLAS P. KEREST (NPC)
United States Attorney
Burlington, Vermont
June 29, 2023